O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW C., | Case No. 5:20-CV-00149 KES |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

# I.

# BACKGROUND

In November 2015, Andrew C. ("Plaintiff") applied for Title XVI social security supplemental security income ("SSI") at age 26, alleging an onset date of November 19, 2015, due to schizophrenia, paranoia, and memory loss. Administrative Record ("AR") 42, 217, 233, 238.[1]  On September 20, 2018, the

---

[1] Plaintiff previously applied for benefits in June 2012.  AR 103.  In March 2014, the Administrative Law Judge ("ALJ") found that Plaintiff's substance-induced psychotic disorder, personality disorder, and drug and alcohol abuse were severe impairments but that if Plaintiff stopped the substance abuse, the remaining limitations would not cause more than a minimal impact on Plaintiff's ability to perform basic work activities.  AR 106–07.  Therefore, because the substance abuse

ALJ conducted a hearing at which Plaintiff, who was represented by counsel, testified along with a vocational expert.  AR 48–73.  On December 3, 2018, the ALJ issued an unfavorable decision.  AR 28–43.

At step two of the sequential evaluation process, the ALJ found that Plaintiff suffered from the following medically determinable severe impairments: schizophrenia and depression.  AR 30.  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations.  AR 31.  In making this determination, the ALJ found that Plaintiff was moderately limited in his ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.[2] AR 31–32.  The ALJ next assessed Plaintiff's residual functional capacity ("RFC") and found that he could perform a full range of work at all exertional levels but with the following nonexertional limitations: "simple routine tasks not at a production rate pace, such as an assembly line; simple work-related decisions with few changes in the work place; and occasional contact with supervisors, coworkers, and no direct contact with the public."  AR 33.

At step four, the ALJ found that Plaintiff had no past relevant work.[3]  AR 42. Based on the RFC and the VE's testimony, the ALJ found at step five that there were jobs that existed in sufficient numbers in the national economy which Plaintiff

---

disorder was a contributing factor material to the disability determination, the ALJ found that Plaintiff was not disabled.  AR 112.

[2] To meet a listing, a claimant's mental impairment must cause at least two "marked" limitations or one "extreme" limitation.  AR 31, 33; 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Plaintiff testified he has a high school diploma and studied automotive technology for a year and a half in college.  AR 54.  In 2009–2010, Plaintiff worked part time for KFC as a cook.  AR 54, 226–27.

could perform, including sweeper cleaner, textile assembler, and lens inserter.  AR 42–43.  The ALJ therefore concluded that Plaintiff was not disabled.  AR 43.

## II.

## ISSUE PRESENTED

Plaintiff presents a single issue for review: whether the ALJ properly considered the opinion of Dr. Brauer Trammell, Plaintiff's treating physician.  (Dkt. 22, Joint Stipulation ["JS"] at 4.)

## III.

## SUMMARY OF THE RECORD EVIDENCE

**A.    Treating Source Medical Evidence.**

Plaintiff began psychiatric treatment in 2010 for depression, delusions, paranoia, and auditory hallucinations.  AR 326, 773, 777.  Beginning in June 2010, he was hospitalized over 15 times for psychiatric issues, the most recent in March 2018, and attempted suicide on one occasion.  AR 327, 773, 793, 930.

In May 2015, Plaintiff complained of depression, bipolar disorder, paranoia, and anxiety.  AR 803.  He reported that his "delusions are pretty much gone" but he still has weekly auditory hallucinations.  AR 803.  His paranoia occurs daily, which he described as "I feel like I'll fly off into space or a nuke is gonna go off."  AR 803.  Plaintiff reported occasional homicidal ideations "due to agitation toward others and … delusions of lack of safety."  AR 803.  He had frequent suicidal ideations.  AR 804.  A mental status examination found slightly impaired concentration, bizarre thought content, paranoid and persecutory delusions, and visual hallucinations.  AR 804–05.  Plaintiff was diagnosed with schizophrenia, paranoid type (DSM-IV code 295.30),[4] and assigned a Global Assistance of

---

[4] Schizophrenia, paranoid type, is characterized by: (1) preoccupation with one or more delusions or frequent auditory hallucinations; (2) for a significant portion of the time since the onset of the disturbance one or more major areas of functioning such as work, interpersonal relations, or self-care are markedly below the level achieved prior to the onset; (3) continuous signs of the disturbance that

3

Functioning ("GAF") score of 45.[5]  AR 803.  In June, Plaintiff reported that his auditory hallucinations were less frequent and his paranoid ideations less noticeable.  AR 561.  In July and August, he reported "signif[icant] improvement." AR 589, 613.  On examination, he exhibited inappropriate smiling and laughing. AR 614.  In an October 2015 mental health status examination, Plaintiff's speech, appearance, and motor activity was normal, but he exhibited a blocking thought process,[6] delusions and auditory hallucinations, a depressed mood, blunted affect, oriented and alert but distracted cognition, and impaired judgment and insight.  AR 645–46.  His medication efficiency was assessed as "symptomatic but stable."  AR 646.  Mental status examinations during November and December 2015 and

persist for at least 6 months; and (4) relative preservation of cognitive functioning and affect.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 313 (4th ed. text rev. 2000) (hereinafter DSM–IV)

[5] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning."  DSM–IV 32. According to DSM–IV, a GAF score of 41–50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Id. 34.  "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement."  Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

[6] "Thought blocking occurs most often in people with psychiatric illnesses, most commonly schizophrenia.  A person's speech is suddenly interrupted by silences that may last a few seconds to a minute or longer.  When the person begins speaking again, after the block, they will often speak about an unrelated subject." <https://en.wikipedia.org/wiki/Thought_blocking> (last visited Dec. 4, 2020) (footnotes omitted).

January through June 2016 found similar results.[7]  AR 656–57, 676–77, 695–96, 730–31, 744–45, 756–57, 798–801.

In a July 2016 mental status examination, Plaintiff's speech, appearance, and mood were appropriate, his motor activity normal, his affect blunted, his judgment/insight impaired, his cognition oriented and alert but distracted, his thought process contained loose associations, and his thought content contained delusions.  AR 376–77.  In August 2016, Plaintiff's appearance, speech, and affect were appropriate, but he displayed impaired attention, an anxious mood, a blocking thought process, impaired judgment/insight, and hallucinations.  AR 384–87, 399–400.  In regular weekly visits from September 2016 through March 2017, Plaintiff's appearance, attention, mood, speech, and affect were all appropriate, but he shared symptoms that signified auditory hallucinations and severe delusions.  AR 410–11, 420–23, 428–29, 432–33, 436–39, 448–49, 454–55, 463–64, 473–74, 483–84, 486–89, 495–96, 499–500, 504–07, 524–25, 527–28.  Plaintiff was routinely assessed to be "symptomatic but stable."  AR 429, 464, 542.  In November 2016, Plaintiff presented to the emergency room, complaining of constant agoraphobia, chronic paranoia, depression, pseudobulbar affect,[8] and auditory and visual hallucinations.  AR 1000.  On examination, Plaintiff exhibited a depressed mood, an inappropriate affect, a blocking thought process, paranoid delusions, auditory and visual hallucinations, distracted attention and concentration, fair memory, insight, and impulse control, and poor judgment.  AR 1002.  He was diagnosed with schizophrenia, paranoid type, and his doses of Abilify and Remeron were increased "for better control of symptoms."  AR 1003.  In December 2016, Plaintiff required

---

[7] In December 2015, Plaintiff presented to the emergency room with complaints of paranoia preventing him from going outside his house.  AR 316–24.

[8] Pseudobulbar affect (PBA) "is a nervous system disorder that can make [an individual] laugh, cry, or become angry without being able to control when it happens."  <https://www.webmd.com/brain/pseudobulbar-affect#1> (last visited Dec. 4, 2020).

treatment in the crisis stabilization unit.  AR 515.  He complained that auditory hallucinations and paranoia "still bother him."  AR 782.  An examination found blunted affect, paranoid delusions, auditory and visual hallucinations, poor concentration, and partial insight.  AR 783–84.

In January 2017, Plaintiff presented with depressive, manic, and anxiety symptoms.  AR 793.  He reported audio hallucinations "every few hours," visual hallucinations once a week, and chronic delusions.  AR 795.  He was diagnosed with schizophrenia and paranoid schizophrenia.  AR 772.  In April 2017, Plaintiff's mood was neutral, his affect was mood-congruent, and his thought process and speech were within normal limits, but he continued to experience auditory and visual hallucinations and "strong bizarre delusions."  AR 846.  He acknowledged the benefits of supportive therapy and conceded that "a lot of my problem is I am bored."  AR 855.  In May 2017, Plaintiff reported depression, flashbacks, paranoia, anger, and auditory and visual hallucinations.  AR 786.  On examination, Plaintiff's appearance and speech were appropriate, but he exhibited paranoid delusions, homicidal ideations, auditory and visual hallucinations, and obsessions.  AR 790. In June, Plaintiff reported that his auditory and visual hallucinations occur "once or twice a week."  AR 888.  In July and August, he reported daily paranoid ideations and auditory hallucinations up to several times a week.  AR 898, 900, 901, 903.  On examination, Plaintiff exhibited a depressed mood, a blunted affect, along with his reported hallucinations and delusions.  AR 901.  In September, he reported "doing better"; he heard "less voices" and experienced paranoid ideations only "sometimes."  AR 904.  In October, Plaintiff presented to the emergency room, complaining of suicidal and homicidal ideations, paranoia, and hallucinations.  AR 1010.  On examination, he exhibited a guarded behavior, slow psychomotor activity, slow speech, anxious and sad mood, a blocked thought process, hallucinations, suicidal and homicidal ideations, and impaired insight, judgment, and impulse control.  AR 1008, 1012.  He was diagnosed with schizophrenia,

1    paranoid type, started on Geodon, and held for observation.  AR 1014.  The next

2    day, Plaintiff's symptoms had improved—he denied any suicidal and homicidal

3    ideations, hallucinations, or delusions—and he was discharged.  AR 1017–18.

4         In mid-2017, Plaintiff began treating at a Riverside University Behavioral

5    Health ("RUBH") clinic, with a student intern who worked with Plaintiff to

6    increase his daily activities and functions and to deal with the painful emotions

7    Plaintiff tended to experience daily.  AR 846.  In April, Plaintiff reported being able

8    to take a public bus alone to his therapy session and "barely felt paranoid at all."

9    AR 846, 848.  Later that month, Plaintiff's thought process was coherent and

10   asymptomatic and "his concentration was the best ever."  AR 859, 862.  The

11   student intern helped Plaintiff create a daily schedule to help him "stay busy

12   throughout the day and effectively decrease his depressive symptoms."  AR 859.

13   At the next weekly session, Plaintiff reported engaging in more productive

14   activities (e.g., exercising, surfing the internet, and drawing) to manage his

15   depression.  AR 862.  The student intern encouraged Plaintiff to be outside more

16   (e.g., walking, going to library, or visiting the recreational center).  AR 862.

17   Plaintiff reported a paranoid episode over the prior weekend, but he was "able to

18   work [his] way out of it."  AR 864.  He acknowledged that his medication regime

19   "seems to be helping"—he was experiencing less than two paranoid episodes

20   weekly.  AR 864, 866, 884.  In May, Plaintiff's concentration levels were impaired

21   due to him responding to internal stimuli.  AR 868.  Nevertheless, Plaintiff was able

22   to take city transportation to the session with "minimal symptoms of anxiety" and

23   reported that his hourly schedule had been effective at keeping him more active

24   during the day.  AR 868.  The student intern encouraged Plaintiff to add more daily

25   activities to his schedule (e.g., yoga and meditation exercises).  AR 868.  A couple

26   weeks later, Plaintiff reported "doing well"; his auditory hallucinations were "not

27   concerning him and he [was] able to ignore them."  AR 876.  On May 24, Plaintiff

28   had his last therapy session with the student intern.  AR 882.  He arrived at the

session using public transportation and "did not experience much paranoia or other strong symptoms in the process." AR 880, 882–83. In June, Plaintiff took the bus to his appointment; he reported "feeling fine" and "having a good day." AR 892.

In July 2017, Plaintiff transferred to RUBH's Blaine Street Adult Clinic. AR 892, 898. He reported having auditory hallucinations only one to two days a month, but paranoid ideations daily. AR 898. In August, Plaintiff reported auditory hallucinations, anger, depression, and anxiety three times weekly and daily paranoia. AR 901. Nevertheless, he reported "doing better," with "good" sleep and appetite, no mood swings, and productive daily activities. AR 901. In September, reported "doing better"; he hears less voices, feels paranoid only "sometimes," and performs many daily living activities. AR 904.

In November 2017, Plaintiff began treating at Blaine Street Clinic with Brauer Trammell, M.D. AR 908. Plaintiff reported decreased paranoia but daily auditory hallucinations, which he described as "multiple voices that talk to each other." AR 908. A mental status examination revealed an "ok" mood, blunted affect, and positive auditory hallucinations, delusions, and paranoia. AR 908. Dr. Trammell restarted Invega and increased the Abilify dosage. AR 909. In December, Plaintiff reported that he was "just trying to cope with the stress of my symptoms," which he described "like the earth losing it's [*sic*] gravity or something." AR 912. An examination revealed a flat affect, disorganized thought process, and positive auditory hallucinations, delusions, and paranoia. AR 912. Dr. Trammell diagnosed schizophrenia. AR 913.

In January 2018, after Dr. Trammell's third session with Plaintiff, Dr. Trammell completed a psychiatric assessment report. AR 772–77. Plaintiff reported that his anger and depression were "better, but the voices [were] still there." AR 772. A mental status examination found a flat affect and positive auditory hallucinations. AR 776. Dr. Trammell confirmed the schizophrenia diagnosis, continued Plaintiff's Remeron, Vistaril, and Invega Sustenna

8

1   prescriptions, and increased his Abilify dosage.[9]  AR 777.  In February, Plaintiff

2   reported that the increased Abilify dosage was "helpful" but noticed an increase

3   lately in his auditory hallucinations.  AR 922.  An examination found a blunted

4   affect, positive auditory hallucinations, and fair insight and judgment.  AR 922.  Dr.

5   Trammell noted that Plaintiff's schizophrenia, depression, delusions, paranoia, and

6   auditory hallucinations "impair[ his] social, occupational and interpersonal

7   relationship functioning."  AR 923.  Plaintiff was briefly hospitalized twice in

8   March 2018 after experiencing both suicidal and homicidal ideations.  AR 930.

9          Plaintiff returned to Dr. Trammell in late March.  AR 928.  He reported that

10  his psychosis subsided after he received his monthly Invega Sustenna injection "but

11  then pick[ed] up closer to the end of the injection cycle."  AR 928.  He also

12  reported feeling more depressed but was hopeful his symptoms would improve with

13  medication.  AR 928.  An examination found a blunted affect and positive auditory

14  hallucinations.  AR 928.  In May, Plaintiff reported "doing better" with no

15  medication side effects.  AR 837.  An examination indicated blunted affect and

16  periodic auditory hallucinations, delusions, and paranoia.  AR 837.  Three weeks

17  later, other than auditory hallucinations, delusions and bouts of anger, Plaintiff

18  reported "doing really good."  AR 842.  He acknowledged "longer and longer"

19  periods where he feels well, with fewer hallucinations.  AR 842.

20

21

22          [9] Remeron (mirtazapine) is an antidepressant used to treat major depressive

23  disorder.  Vistaril (hydroxyzine) is an antihistamine that is used to treat anxiety and
    tension.  Invega Sustenna (paliperidone), which is given by injection, and Abilify

24  (aripiprazole) are antipsychotic medications used to treat schizophrenia.

25  <www.drugs.com> (last visited Dec. 2, 2020).

26          Dr. Trammell's therapy was primarily limited to adjusting Plaintiff's
    medication regimen.  AR 838, 843, 909, 913, 923, 929.  Other practitioners at

27  Blaine Street Clinic provided Plaintiff with supportive therapy.  E.g., AR 840, 927,

28  932, 935, 937.

9

1   **B.      Medical Opinions.**

2          **1.      Consultative Examiner.**

3          In March 2016, Sohini P. Parikh, M.D., completed a psychiatric evaluation at

4   the request of the Agency.  AR 325–32.  Dr. Parikh was not provided any medical

5   records to review.  AR 326.  Plaintiff reported multiple hospitalizations due to his

6   history of paranoia, auditory hallucinations, depression, anxiety, and loss of

7   memory and concentration.  AR 326–27.  Plaintiff acknowledged no cognitive

8   problems completing household tasks, managing his own funds, or following

9   simple oral and written instructions but claimed he "[did] not want to socialize with

10  others due to his paranoia."  AR 328.  Dr. Parikh found Plaintiff "evasive" during

11  the mental status examination, which found a depressed and anxious mood but a

12  "brighter" affect, no evidence that Plaintiff was responding to internal stimuli, no

13  ability to interpret simple proverbs, perform serial sevens or serial threes

14  subtractions, or perform any complex arithmetic calculations.  AR 328–30.  Dr.

15  Parikh diagnosed schizophrenia, paranoid type (per DSM-IV), and assigned a GAF

16  score of 52–57.[10]  AR 331.  Dr. Parikh opined that Plaintiff had moderate

17  difficulties in maintaining social functioning, understanding, carrying out, and

18  remembering complex instructions, responding to coworkers, supervisors, and the

19  general public, responding appropriately to usual work situations, and dealing with

20  changes in a routine work setting, but no impairments in concentration, persistence,

21  and pace or in the ability to understand, carryout, and remember simple

22  instructions.  AR 331–32.

23

24

25

26          [10] A GAF score of 51–60 "indicates moderate symptoms (e.g., flat affect and
    circumlocutory speech, occasional panic attacks) or moderate difficulty in social,
27  occupational, or school functioning (e.g., few friends, conflicts with peers or co-
    workers)."  DSM-IV 34.
28

1       **2.     State Agency Consultants.**

2         In April 2016, Tawnya Brode, Psy.D., a state agency consultant, reviewed

3 the medical record and found that Plaintiff had a moderate restriction of activities of

4 daily living, moderate difficulties in maintaining social functioning, and moderate

5 difficulties in maintaining concentration, persistence, or pace. AR 124. Dr. Brode

6 opined that Plaintiff was moderately limited in his ability to understand, remember,

7 or carry out detailed instructions, work in coordination with or in proximity to

8 others without being distracted by them, complete a normal workday and workweek

9 without interruptions from psychologically based symptoms and to perform at a

10 consistent pace without an unreasonable number and length of rest periods, interact

11 appropriate with the general public, accept instructions and respond appropriately to

12 criticism from supervisors, and respond appropriately to changes in the work

13 setting. AR 126–27. Dr. Brode concluded that Plaintiff had the mental RFC to

14 understand, remember, and carry out simple instructions; sustain appropriate

15 interaction with the public and maintain relationships with coworkers and

16 supervisors; and respond appropriately to most changes in the workplace. AR 127.

17         In August 2016, S. Adamo, Psy.D., another state agency consultant, reviewed

18 the medical record and generally agreed with Dr. Brode's assessments. AR 137–

19 41. However, Dr. Adamo concluded that Plaintiff can recall and complete simple

20 tasks, do nonpublic work and work that is not primarily interpersonal, and tolerate

21 typical change. AR 139–41.

22       **3.     Treating Physician.**

23         In June 2018, Dr. Trammell completed a one-page Narrative Report. AR

24 770. He noted that Plaintiff had been a patient of Riverside County Mental Health

25 since July 2011, with the most recent visit in May 2018. AR 770. Dr. Trammell

26 commented that Plaintiff had a significant history of schizophrenia, had been

27 hospitalized over 15 times, had attempted suicide in the past, and suffered from

28 depression, hallucinations, delusions, and paranoia. AR 770. He diagnosed

schizophrenia, paranoid type, and reported that Plaintiff's prescriptions include Abilify, Remeron, Vistaril, and Invega.  AR 770.  He reported that Plaintiff had paranoid thought, psychotic symptoms—auditory and visual hallucinations and delusions—influencing behavior, moderately impaired judgment, evidence of ideas of reference and anger,[11] depression, inappropriate affect, apathy, affective flattening, and a fearful attitude.  AR 770.  Dr. Trammell opined that Plaintiff could not maintain a sustained level of concentration, sustain repetitive tasks for an extended period, adapt to new or stressful situations, or interact with strangers, coworkers, or supervisors.  AR 770.  He concluded that Plaintiff's prognosis was chronic and he could not complete a 40-hour workweek without decompensating. AR 770.

**C.    Plaintiff's Subjective Symptom Statements.**

In July 2016, Plaintiff submitted an Adult Function Report.  AR 270–78.  He complained of paranoia, anxiety, stress, depression, and memory loss.  AR 270. Nevertheless, he acknowledged a limited range of daily activities.  AR 271–72, 274.  While his paranoia precluded him from being alone, he was able to go outside and use public transportation.  AR 273.  Plaintiff asserted having problems with talking, hearing, seeing, memorizing, completing task, concentrating, understanding, and following instructions.  AR 275.  Nevertheless, he acknowledged an ability to sometimes follow written instructions and denied any problems getting along with authority figures.  AR 275–76.

At his September 2018 hearing, Plaintiff acknowledged occasional alcohol and cannabis use while socializing with friends.  AR 55–56.  He described his schizophrenia symptoms as paranoia, anxiety, panic attacks, depression, psychotic

---

[11] "Ideas of reference and delusions of reference describe the phenomenon of an individual experiencing innocuous events or mere coincidences and believing they have strong personal significance."  <https://en.wikipedia.org/wiki/Ideas_and_delusions_of_reference> (last visited Dec. 4, 2020) (footnote omitted).

1  anger, melancholia, and auditory and visual hallucinations.  AR 59–60.  He

2  reported occasional suicidal ideations but acted on them only once.  AR 59.

3  Plaintiff acknowledged that his medications help "a little."  AR 63.  During a

4  typical day, Plaintiff walks to the gym for an hour of exercise, uses the internet, and

5  occasionally goes to church.  AR 66–68.

6  **IV.**

7  **DISCUSSION**

8  **A.**    **Rules Governing Consideration of Medical Opinion Evidence.**

9      An ALJ must consider all medical opinions of record.  20 C.F.R.

10  §§ 404.1527(b), 416.927(b).  The regulations "distinguish among the opinions of

11  three types of physicians: (1) those who treat the claimant (treating physicians);

12  (2) those who examine but do not treat the claimant (examining physicians); and

13  (3) those who neither examine nor treat the claimant (nonexamining physicians)."

14  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996).

15  "Generally, a treating physician's opinion carries more weight than an examining

16  physician's, and an examining physician's opinion carries more weight than a

17  reviewing [(nonexamining)] physician's."  Holohan v. Massanari, 246 F.3d 1195,

18  1202 (9th Cir. 2001); accord Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

19  2014).  "The weight afforded a non-examining physician's testimony depends 'on

20  the degree to which they provide supporting explanations for their opinions.'"

21  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20

22  C.F.R. § 404.1527(c)(3)).

23      The medical opinion of a claimant's treating physician is given "controlling

24  weight" so long as it "is well-supported by medically acceptable clinical and

25  laboratory diagnostic techniques and is not inconsistent with the other substantial

26  evidence in [the claimant's] case record."[12]  20 C.F.R. §§ 404.1527(c)(2),

27

28      [12] For claims filed on or after March 27, 2017, the Agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

13

416.927(c)(2).  "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017; see also 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Ahearn v. Saul, No. 19-35774, —F.3d—, 2021 WL 609825, at *2, 2021 U.S. app. LEXIS 4472, at *4 (9th Cir. Feb. 17, 2021) (reaffirming that a federal court "review[s] the decision of the ALJ for substantial evidence").  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Bayliss, 427 F.3d at 1216; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.").  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted).  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

---

opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources.  20 C.F.R. § 404.1520c(a).

1    **B.    Analysis.**

2        Dr. Trammell opined that Plaintiff has *no* ability to maintain a sustained level

3    of concentration, to sustain repetitive task for extended periods, adapt to new or

4    stressful situations, or interact appropriately with strangers, coworkers, or

5    supervisors.  AR 770.  He further concluded that Plaintiff cannot complete a 40-

6    hour workweek without decompensation.  AR 770.  The ALJ considered but gave

7    "little weight" to Dr. Trammell's opinion.  AR 41.

8        The ALJ provided specific and legitimate reasons for giving Dr. Trammell's

9    opinion only little weight.  First, the ALJ found that Dr. Trammell's narrative

10   opinion included "insufficient references to medically acceptable objective clinical

11   or diagnostic findings."  AR 41.  Plaintiff contends that Dr. Trammell's "report

12   contains a mental status examination as well as Dr. Trammell's observations."  (JS

13   at 8.)  To the contrary, Dr. Trammell's opinion was not given coincident with a

14   mental examination.  AR 845.  Indeed, the opinion was authored a month after the

15   most recent examinations.  AR 770.  Further, the June 2018 opinion was not

16   consistent with the May 2018 examinations.  In two May sessions, Plaintiff

17   reported "doing better" and "doing really good except for the voices and some

18   anger."  AR 837, 842.  Other than occasional auditory hallucinations and delusions,

19   Plaintiff denied depression, anxiety, mania, medication side effects, and suicidal or

20   homicidal ideations.  AR 837, 842.  He reported improvement in his hallucinations,

21   paranoia, and delusions and was able to minimize the auditory hallucinations by

22   listening to music.  AR 837, 842.  In May, Dr. Trammell noted that Plaintiff was

23   calm, cooperative, fairly kempt and groomed, and demonstrated appropriate eye

24   contact, speech, and thought process.  AR 842.  Nevertheless, in the June opinion,

25   Dr. Trammell reported that Plaintiff was paranoid, depressed, apathetic, suffered

26   from both visual and auditory hallucinations, and professed suicidal ideations.  AR

27   770.  Thus, the extreme limitations assessed by Dr. Trammell were contradicted by

28   his own recent treatment notes.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041

(9th Cir. 2008) (incongruity between treating physician's opinion and his treating records is a specific and legitimate reason for rejecting physician's opinion); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may properly discount a treating physician's opinion that is conclusory, brief, and unsupported by the overall medical record); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings").

Plaintiff argues that Dr. Trammell's assessment was supported by his schizophrenia diagnosis.  (JS at 9.)  However, "[t]he mere existence of an impairment is insufficient proof of a disability."  <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993); <u>see Key v. Heckler</u>, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment … is not sufficient to sustain a finding of disability."); <u>accord Lundell v. Colvin</u>, 553 F. App'x 681, 684 (9th Cir. 2014). Even if a claimant receives a particular diagnosis, it does not necessarily follow that the claimant is disabled, because it is the claimant's symptoms and true limitations that generally determine whether she is disabled.  <u>See Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001); <u>Gentle v. Barnhart</u>, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment.").  Here, the ALJ acknowledged that Plaintiff's schizophrenia was a severe, medically determinable impairment, but nonetheless found Plaintiff able to perform simple, routine tasks with only occasional contact with supervisors and coworkers and no contact with the public. AR 30, 33.

Second, the ALJ observed that "Dr. Trammell's assessment appears to have been based on a summary of [Plaintiff's] subjective complaints, diagnoses, and treatment without documenting any significant positive objective findings."  AR 41.

16

1 | Plaintiff accurately notes that because Plaintiff "suffers from a mental impairment,
2 | the import of a psychiatrist judgment and consideration of a patient's subjective
3 | symptoms is of critical importance." (JS at 10.) Indeed, "[p]sychiatric evaluations
4 | may appear subjective, especially compared to evaluation in other medical fields.
5 | Diagnoses will always depend in part on the patient's self-report, as well as on the
6 | clinician's observations of the patient. But such is the nature of psychiatry." <u>Buck</u>
7 | <u>v. Berryhill</u>, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, however, the ALJ gave Dr.
8 | Trammell's opinion little weight *not* merely because he relied on Plaintiff's
9 | subjective statements but also because Dr. Trammell failed to acknowledge "any
10 | significant positive objective findings." AR 41. To be entitled to significant
11 | weight, a treating physician's opinion must be supported by the *overall* medical
12 | record. <u>Tommasetti</u>, 533 F.3d at 1041; <u>Batson</u>, 359 F.3d at 1195.

13 |      Here, the record does not reflect the extreme limitations opined by Dr.
14 | Trammell. Indeed, Plaintiff acknowledged an ability to perform many daily
15 | activities, including spending time with others, and travels by himself to the local
16 | gym for daily exercise.[13] AR 66–68, 271–74. He acknowledged the benefits of his
17 | therapy sessions and increased daily activities, conceding that his problems are
18 | exacerbated by boredom. AR 855. The ALJ found that "[Plaintiff] has described
19 | daily activities[ ] which are not limited to the extent one would expect, given the
20 | complaints of disabling symptoms and limitations." AR 39. Further, Plaintiff does
21 | not challenge the ALJ's partial rejection of his subjective symptom statements. AR
22 | 34–35, 38–39, 42. "A physician's opinion of disability premised to a large extent
23 | upon the claimant's own accounts of his symptoms and limitations may be
24 | disregarded where those complaints have been properly discounted." <u>Morgan v.</u>
25 | <u>Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9th Cir. 1999) (citation omitted);
26 | <u>accord</u> <u>Buck</u>, 869 F.3d at 1049; <u>see</u> <u>De Botton v. Colvin</u>, 672 F. App'x 749, 751

27 | 
28 |     [13] Dr. Trammell's opinion was provided less than three months prior to Plaintiff's hearing testimony. AR 48, 770.

17

1  (9th Cir. 2017) (ALJ properly rejected treating physician's opinion which "relied on

2  [the claimant's] self-serving statements").

3  Plaintiff argues that because Dr. Trammell "was one of several treatment

4  providers at [RUBH]," his opinion was supported by these other providers'

5  objective findings.  (JS at 9–10.)  However, even assuming that Dr. Trammell

6  reviewed the complete RUHB record before making his opinion, the objective

7  evidence does not support his extreme opinions.  For examples, just prior to Dr.

8  Trammell beginning to treat Plaintiff, Plaintiff showed significant improvement

9  with multiple symptoms: he was able to take public transportation alone to his

10 therapy sessions; his thought process was coherent and asymptomatic and his

11 concentration "was the best ever"; with the help of the student intern, Plaintiff

12 created a daily schedule to effectively manage his depression; he increased his

13 outside activities; his paranoid episodes decreased to less than two per week; and he

14 was better able to ignore and manage his auditory hallucinations, which occurred

15 only one or two days per month.  AR 846, 848, 859, 862, 864, 866, 868, 876, 882,

16 884, 892, 898, 901, 904.

17 Third, the ALJ concluded that "the objective medical evidence does not

18 support [Dr. Trammell's] assessments."  AR 41.  ALJs routinely discredit extreme

19 medical opinions for being inconsistent with treating records.  See, e.g., Bayliss,

20 427 F.3d at 1216 (ALJ properly rejected doctor's statement due to discrepancies in

21 the doctor's report and his own treatment records made on the same day).  The ALJ

22 accurately noted "numerous references within [Plaintiff's] treatment records

23 reflecting improvement with [Plaintiff's] symptoms, as acknowledged by [Plaintiff]

24 or reported by his treatment providers."  AR 41 (citing id. 376–77, 384–87, 399–

25 400, 410–11, 419–23, 428–29, 436–39, 444–45, 448–49, 454–55, 463–64, 540–41,

26 561–62, 589–90, 613–14, 645–46, 656–57, 676–77, 695–96, 730–31, 744–45, 757–

27 57, 776, 793, 798, 842).  Symptom improvement is an adequate reason for not fully

28 crediting a treating physician's opinion.  Rollins, 261 F.3d at 856.  Plaintiff does

not dispute that these records demonstrate improvement.  (JS at 12.)  Instead, he asserts that because "mental impairments wax and wane," the "record must be viewed holistically."  (Id.)  Indeed, that is the ALJ's critique of Dr. Trammell's opinion—his failure to look at the record holistically instead of just focusing on the negative evidence.  AR 41.  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

Finally, the ALJ's rejection of Dr. Trammell's opinion is supported by the opinions of the consultative examiner and the state agency reviewing physicians.  In March 2016, Dr. Parikh conducted a mental status examination, diagnosed schizophrenia, and opined that Plaintiff had moderate difficulties in maintaining social functioning, understanding, carrying out, and remembering complex instructions, responding to coworkers, supervisors, and the general public, responding appropriately to usual work situations, and dealing with changes in a routine work setting but no impairments in concentration, persistence, and pace or in the ability to understand, carryout, and remember simple instructions.  AR 328–32.  In April 2016, Dr. Brode reviewed the medical record and concluded that Plaintiff had the mental RFC to understand, remember, and carry out simple instructions; sustain appropriate interaction with the public and maintain relationships with coworkers and supervisors; and respond appropriately to most changes in the workplace.  AR 124, 127.  In August 2017, Dr. Adamo reviewed the medical record and generally agreed with Dr. Brode's assessments, but concluded that Plaintiff can recall and complete simple tasks, do nonpublic work and work that is not primarily interpersonal, and tolerate simple change.  AR 139–41.  The ALJ gave these opinions "partial weight," finding that the subsequent medical record, "including [Plaintiff's] subjective complaints and the objective medical evidence, support *additional* limitations not considered by these psychiatrists and psychologists."  AR 40–41 (emphasis added).

Dr. Parikh's opinion alone "constitutes substantial evidence, because it rests on [her] own independent examination of [Plaintiff]." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) ("Reports of consultative physicians called in by the Commissioner may serve as substantial evidence.") (citation omitted). Because Drs. Brode and Adamo "reviewed all medical evidence available at the time of the examinations, and their opinions were consistent with other objective and opinion evidence in [Plaintiff's] record," their opinions were "also supported by substantial evidence." Sisk v. Saul, 820 F. App'x 604, 605 (9th Cir. 2020); see Ahearn, 2021 WL 609825, at *5, 2021 U.S. App. LEXIS 4472, at *12 (ALJ did not err in adopting assessments of nonexamining state agency consultants because their assessments "were supported by other evidence in the record and were consistent with it") (citation omitted); Tonapetyan, 242 F.3d at 1149 (contrary opinion of a nonexamining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record); accord Dingman v. Saul, 830 F. App'x 247, 248 (9th Cir. 2020); see also 20 C.F.R. § 404.1527(c)(3) ("because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions"); SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). Nevertheless, Plaintiff argues that the "opinions of the State agency and consultative examiner do not constitute substantial evidence" because and they "did not rely on findings that Dr. Trammell did not consider." (JS at 21 [citing Orn, 495 F.3d at 632].)

Plaintiff's counsel misapprehends the Orn ruling. "When an examining physician relies *on the same clinical findings* as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are *not*

1   'substantial evidence.'"  <u>Orn</u>, 495 F.3d at 632 (emphasis added).  However where,

2   as here, the consultative examiner *conducts her own independent examination*, her

3   conclusions *are* substantial evidence.  <u>Id.</u> ("By contrast, when an examining

4   physician provides independent clinical findings that differ from the findings of the

5   treating physician, such findings are 'substantial evidence.'") (citation omitted).

6   Indeed, because there were no records available for Dr. Parikh to review, AR 326,

7   her findings necessarily relied *only* on her independent clinical examination.  And

8   the state agency consultants properly considered all of the evidence before them,

9   thus satisfying the regulatory requirements.  <u>See</u> <u>Owen v. Saul</u>, 808 F. App'x 421,

10  423 (9th Cir. 2020) ("At the time they issued their opinions, the non-examining

11  experts had considered all the evidence before them, satisfying the requirements set

12  forth in 20 C.F.R. § 404.1527(c)(3).").  The ALJ did not err in giving partial weight

13  to the opinions of Drs. Parikh, Brode, and Adamo.

14          In sum, the ALJ gave specific and legitimate reasons supported by substantial

15  evidence for discounting Dr. Trammell's opinion.

16                                          **V.**

17                                   **CONCLUSION**

18          For the reasons stated above, IT IS ORDERED that judgment shall be

19  entered AFFIRMING the decision of the Commissioner.

20

21  DATED:  <u>February 24, 2021</u>                    *Karen E. Scott*
                                                    _____
22                                                  KAREN E. SCOTT
                                                    United States Magistrate Judge
23

24

25

26

27

28